## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

ROBIN EDWARDS,         )
                              )
           Plaintiff,      )
v.                        )      Case No. CIV-20-97-RAW-SPS
                              )
KILOLO KIJAKAZI,       )
Acting Commissioner of the Social  )
Security Administration, [1]    )
                              )
          Defendant.    )

## REPORT AND RECOMMENDATION

The claimant Robin Edwards requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled.  For the reasons discussed below, the Commissioner's decision should be hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.  In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was twenty-six years old at the time of the administrative hearing (Tr. 68). She has a high school education and has worked as a certified nurse's aide ("CNA") (Tr. 52, 343). The claimant alleges that she has been unable to work since August 15, 2015, due to depression, bipolar disorder, and seizures (Tr. 342).

### Procedural History

On November 2, 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. On November 4, 2017, she also applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Charles Walters conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 13, 2019 (Tr. 15-57). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant could perform a restricted range of unskilled work activity at all exertional levels, in that she retained the residual functional capacity ("RFC") to perform simple, routine, and repetitive tasks, but not at a production pace such as assembly line work; make simple work-related decisions; and interact occasionally with supervisors, co-workers, and the

general public (Tr. 44). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i. e.*, housekeeper, laundry folder, and industrial cleaner (Tr. 52-57).

## Review

The claimant contends that the ALJ erred by: (i) improperly determining that she did not meet the requirements of Appendix 1, Part 404, Subpart P ("the Listings"), specifically Listings 12.04, 12.06, 12.08, and 12.15; (ii) failing to properly assess the evidence at step four in determining her RFC; and (iii) improperly determining jobs she could perform by, *inter alia*, failing to include seizure precautions. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of major depressive disorder/bipolar I disorder, personality disorder, generalized anxiety disorder, panic disorder, and posttraumatic stress disorder, but that her seizure disorder, cannabis use, GERD, sleep apnea, headaches, and obesity were non-severe impairments (Tr. 20-40). The relevant medical evidence as to the claimant's mental impairments reveals that the claimant had one inpatient hospitalization for suicidal ideation in September 2015, two months after giving birth in July 2015, which was attributed to post-partum depression (Tr. 557, 601, 724). The claimant underwent six more inpatient hospitalizations for suicidal ideation between August 2017 and May 2018, two in August 2017, one in September 2017, one in November 2017, one in January 2018, and one in May 2018 (Tr., *e. g.*, 584, 615, 632, 643, 668, 674, 695, 733, 781, 800, 830, 883, 994, 1009, 1029, 1101, 1129,1236). Following

each incident, the claimant was stabilized and sent home. These hospitalizations revealed various diagnoses including: major depressive disorder, recurrent, severe with psychosis; generalized anxiety disorder; panic disorder without agoraphobia, bipolar depression and/or bipolar I, PTSD, panic attacks (Tr., *e. g.*, 584, 617, 633, 657, 675, 697, 736, 808, 830).

On June 8, 2016, Dr. Theresa Horton, Ph.D., conducted a diagnostic interview and mental status examination of the claimant. She diagnosed the claimant with an unspecified mood disorder, with anxious and depressed features, as well as Cluster B/Dependent Personality Traits (Tr. 580). Under the prognosis section, Dr. Horton opined that the claimant appeared capable of understanding, remembering, and managing most simple and complex instructions and tasks with adequate adjustment into many settings, although she may benefit from a job specific skills training program, to include job coaching (Tr. 581). Dr. Horton noted that the claimant stated she would prefer to be a stay-at-home mom (Tr. 581).

On March 5, 2018, state agency psychologist Bruce Lochner, Ph.D., completed a Mental RFC Assessment and found the claimant was moderately limited in the ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially-appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 101-102). He concluded that the claimant could perform simple (1-3 step)

and some complex tasks (4-5 step); maintain adequate concentration, persistence, and pace for employment; maintain adequate interpersonal relationships to interact and relate well enough to accept direction and feedback from supervisors and peers as is typical in work life; tolerate occasional incidental public contact, but not duties involving direct public contact, meaning she is best suited for work that does not feature public contact; and she could adapt to the mental demands of a work situation (Tr. 102). On July 12, 2018, Dr. Ryan Jones completed what appears to be two different reconsideration assessments as to the claimant's mental RFC. In the first, he appeared to find several more moderate limitations as to the claimant, but adopted the mental RFC articulated by Dr. Lochner (Tr. 141-143). In the second, Dr. Jones simply found the claimant was moderately limited in the three typical areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 158-159). He then concluded that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 160).

At the administrative hearing, the claimant testified that she has difficulty getting out of bed and her family members help to take care of her two small children (Tr. 72). She further testified that she stopped taking her mental health medications in August 2018, because she believed they were causing her seizures; she also testified that she believed they did not help her (Tr. 71, 76).

In his extensive written opinion, the ALJ seemingly summarized every treatment record at step two. At step three, the ALJ stated that he considered Listings 12.04, 12.06, 12.08, and 12.15, and concluded that her impairments did not meet or medically equal any

listing (Tr. 40-44).  In discussing the opinion evidence at step four, the ALJ stated that Dr. Horton's opinion was persuasive to the extent she found the claimant could understand, remember, and carry out simple instructions and tasks, but not to the extent she found the claimant could perform complex tasks and instructions.  He further found her statement regarding job training to be "vague at best, as it provides no explicit functional limitations" and specifically found unpersuasive any opinion that the claimant required job training (Tr. 50-51).  He further found that there was "no reasonable construction" as to her opinion that showed "greater limitation than the undersigned is finding" (Tr. 51).    Additionally, he found that the opinions of Dr. Lochner and Dr. Jones[3] were "generally consistent," noting the claimant had not taken mental health medication since August 2018 and was not under continuing mental health treatment (Tr. 51).  Several times he noted the claimant's repeated in-patient treatment for suicidal ideation over ten months, but that she had responded to treatment on each occasion, and that longitudinal mental health findings were not inconsistent with the state reviewing physician opinions (Tr. 51).  He noted that the limitation to simple, routine, and repetitive tasks was *more* restrictive than their findings allowing for complex tasks (Tr. 51).

The claimant first asserts that she meets or medically equals the requirements of Listings 12.04 (affective mood disorders), 12.06 (anxiety-related disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma and stressor related disorders).  Although the claimant bears the burden of proof at step three to establish that

---

[3] In discussing Dr. Jones's opinion, the ALJ consistently cited to both of his evaluations (Tr. 35, 51).

she meets or equals the requirements for a listed impairment, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996) (quotation omitted). *Clifton* requires the ALJ to discuss the evidence and explain why the claimant was not disabled at step three. *Id.* (*citing Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986)).

Listings 12.04, 12.06, 12.08, and 12.15 contain the following criteria: (i) "paragraph A" medical documentation criteria, (ii) "paragraph B" functional criteria, and (iii) "paragraph C" criteria for serious and persistent mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00A(2), 12.04, 12.06, 12.08, 12.15 (2017).  In order to meet one of these Listings, a claimant must satisfy the "paragraph A" medical documentation criteria and either the "paragraph B" criteria or the "paragraph C" criteria. *Id.*  Here, the ALJ determined that the claimant met the "A" criteria for each of these impairments, but that she did not meet the "B" or "C" (where applicable) criteria (Tr. 41).  The "paragraph B" criteria for all four Listings are identical, and require proof that the claimant has an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:   (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4)  adapt or manage oneself.  *Id.*  Here, the ALJ determined that the claimant had moderate limitations in the first three areas and no limitations in the area of adapt and manage oneself (Tr. 43).  The ALJ thus found the "paragraph B" criteria were not satisfied (Tr. 41-44).  He further found the claimant did

not meet the applicable "C" criteria, which requires the impairment must be "serious and persistent" for a two-year period because the claimant exhibited serious symptoms from August 2017 through June 2018, but now requires no mental health treatment and takes no psychotropic medication (Tr. 44).

In support of her position that she meets these Listings, the claimant contends that the ALJ improperly determined she had no limitation in the areas of adapt and manage oneself, contending that it was an extreme limitation in light of her six inpatient hospitalizations for suicidal ideation. Alternatively, she contends that she had at least a marked limitation in this area, as well as a marked limitation in the area of interacting with others, given statements by the claimant and her mother regarding her ability to interact with others. In other words, the claimant essentially asks the undersigned Magistrate Judge to reweigh the evidence in the record, which is impermissible. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). Moreover, as set forth above, the ALJ clearly considered the effect of the claimant's severe mental impairments and inpatient hospitalizations at step three and when assessing the RFC at step four. *See Padilla v. Colvin,* 2015 WL 5341788, at *4 (D. Colo. Sept. 15, 2015) (finding no reversable error at step three where the claimant did not "show with specificity how the ALJ may have erred in his evaluation" and "it [was] clear that the ALJ considered the effect of [the claimant's impairments] on her RFC.").

Next, the claimant asserts that the ALJ erred in evaluating the medical source opinion evidence from Dr. Lochner and Dr. Jones. For claims filed on or after March 27,

2017,[4] medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through

---

[4] Although the Plaintiff filed her applications on or after November 2, 2017, she contends that the prior regulations apply because the ALJ did not apply *res judicata* to a prior claim and therefore he *de facto* reopened her older claim. But the ALJ specifically found no reason to reopen and revise the prior denial and found that it remained the final decision of the Commissioner as to claims prior to June 16, 2016 (Tr. 57). The undersigned Magistrate Judge therefore finds that the prior claim was not reopened and that the new regulations apply to the present claim.

(c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). The ALJ's treatment of the state reviewing physician opinions, as described above, meets these standards. The ALJ specifically addressed their findings, including persuasiveness, supportability, and consistency, and the undersigned Magistrate Judge finds that he considered each opinion in turn and gave numerous reasons, supported by the record, for adopting or not adopting the limitations described in them. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") (internal citation omitted).

The claimant's specific complaint is that the ALJ engaged in improper "picking and choosing" when he failed to reconcile differences in their reports, and particularly where Dr. Jones identified more "moderate" limitations than Dr. Lochner had. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). This is not borne out by the record, however, because the ALJ did specifically discuss their findings at length. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. Moreover, the difference in their opinions is not sufficient to rebut the ALJ's findings as to the claimant's functional limitations and actual RFC. In this case, the Court finds that the ALJ set out the appropriate analysis, and cited evidence supporting his reasons, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence

in the record. Accordingly, the ALJ's determination here is entitled to deference and the undersigned Magistrate Judge finds no error in analyzing these opinions.

Lastly, the claimant argues that the ALJ erred at step five because the jobs identified either do not account for her nonsevere seizure impairment or exceed the assigned RFC. "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Here, the claimant asserts that the job of laundry folder,[5] DICOT § 369.687.018, has unidentified hazards that do not account for necessary seizure precautions, and that it also requires a production rate pace which was eliminated by the RFC. As to the hazards for the job of laundry folder, the claimant did not identify what hazards were incompatible with her seizure disorder, nor has she asserted that the ALJ erred in accounting for her non-severe impairment of seizure disorder at step four. In addition to the laundry folder job requiring a production pace, the claimant also asserts that the job of housekeeping cleaner, DICOT §323.687-014, requires a production rate pace. Both jobs reference "when the job requires working at a production

---

[5] The claimant correctly points out that the ALJ correctly identified the job *title* of laundry folder, DICOT § 369.687.018, which the VE identified at the administrative hearing, but incorrectly cited to DICOT § 318.687-010 as the Dictionary of Occupational Titles number rather than the appropriate one (Tr. 56, 82). Neither of the parties dispute that this was anything more than a scrivener's error, and the undersigned Magistrate Judge thus proceeds as though the ALJ cited to the correct number in his written decision.

-12-

rate pace," *see* DICOT §§ 369.687.018, 323.687-014, but this appears to indicate that not all of these jobs would *always* require a production rate pace. However, it is also true that the VE did not clarify or reduce the number of jobs based on some jobs with this classification requiring a production pace, and the ALJ did not account for this in his opinion.

But even assuming *arguendo* that the jobs of laundry folder and housekeeping cleaner require an impermissible production pace by definition, such a finding would be harmless error because the claimant could still perform the job of industrial cleaner, DICOT § 389.683-010. The claimant asserts that she cannot perform this job because seizure precautions prevent her from driving, but that is not a restriction in the assigned RFC nor has the claimant pointed to evidence in the record where a physician restricted the claimant from driving as a seizure precaution. As such, this job is not in conflict with the claimant's RFC. Accordingly, the errors identified with the other two jobs are classified as harmless error, because there is a still a job the claimant can perform and the claimant has not alleged that the housekeeping/cleaner job does not exist in significant numbers. *See, e. g., Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform job was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

The ALJ appropriately gave reasons for the RFC determination and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289 293 (10th Cir.

2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citations omitted). The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

### Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**